NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3662
_____

BEVERLY LAMBERSON, Administratrix of the Estate of
Melinda Lamberson Reynolds, Deceased,

Appellant

v.

COMMONWEALTH OF PENNSYLVANIA; PENNSYLVANIA DEPARTMENT OF
STATE; PENNSYLVANIA BUREAU OF PROFESSIONAL AND OCCUPATIONAL
AFFAIRS; PENNSYLVANIA DIVISION OF PROFESSIONAL HEALTH
MONORITING PROGRAMS; PENNSYLVANIA STATE BOARD OF NURSING;
BASIL L. MERENDA; LINDA TANZINI AMBROSO; K. STEPHEN ANDERSON;
CHRISTOPHER BARTLETT; RAFAELA COLON;  KATHLEEN M. DWYER; JUDY
A. HALE; SUZANNE M. HENDRICKS; JOSEPH J. NAPOLITANO; ANN L.
O'SULLIVAN; JANET H. SHIELDS; JOANNE L. SORENSEN; PAULET E.
WASHINGTON
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 3-09-cv-01492)
District Judge: Hon. James M. Munley
_____

Submitted Under Third Circuit LAR 34.1(a)
March 27, 2014
_____

Before: FUENTES and SHWARTZ, <u>Circuit Judges</u>, and ROSENTHAL, <u>District Judge</u>.[*]

_____

[*] The Honorable Lee H. Rosenthal, United States District Judge for the Southern
District of Texas, sitting by designation.

1

(Filed: March 28, 2014)

_____

OPINION

_____

SHWARTZ, <u>Circuit Judge</u>.

Plaintiff Beverly Lamberson, as administratrix of the estate of Melinda Lamberson Reynolds,[1] appeals the denial of her motion for partial summary judgment and the grant of summary judgment in favor of Defendants Commonwealth of Pennsylvania, Pennsylvania Department of State ("DoS"), Pennsylvania Bureau of Professional and Occupational Affairs ("BPOA"), Pennsylvania Division of Professional Health Monitoring Programs ("PHMP"), Pennsylvania State Board of Nursing ("BoN"), and various state officials.[2] Plaintiff argues that Defendants suspended Reynolds's nursing license in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Because there is no dispute that Reynolds was not in compliance with any of the BoN directives, we will affirm.

I.

As we write principally for the benefit of the parties, we recite only the essential facts and procedural history. Reynolds was a licensed practical nurse and registered

_____

[1] Reynolds initiated this action, but passed away during its pendency. Beverly Lamberson was subsequently substituted as Plaintiff.
[2] The state officials include the commissioner of the BPOA and members of the BoN.

2

nurse in Pennsylvania for over fifteen years.  Reynolds suffered from substance abuse problems, particularly with opioid drugs, and starting in 1997, she began receiving methadone maintenance treatment for her opioid addiction.[3]

In February 2005, DoS, which administers professional licensing in Pennsylvania,[4] received a complaint from Reynolds's then employer that Reynolds was acting "erratic" at work, her charting was "illegible, incorrect or missing all together," and she tested positive for benzodiazepines.  App. 817.  DoS forwarded the complaint to PHMP, which assists licensed professionals who suffer from impairments, such as chemical dependency, to obtain treatment and monitoring to ensure that they can safely practice their licensed professions.

On March 1, 2005, Pearl Harris, a case manager at PHMP, sent Reynolds a letter informing her that she could enroll in PHMP's Voluntary Recovery Program ("VRP") and receive treatment without the need for action by the BoN.  Reynolds expressed interest in enrolling in the program and took the first step by undergoing an assessment at A Better Today, a PHMP-approved alcohol and drug treatment facility, on June 14, 2005. A Better Today deemed outpatient treatment appropriate.  From June 14, 2005 to September 1, 2005, Reynolds, however, attended only six of sixteen scheduled treatment

---

[3] Methadone is a legal synthetic opioid drug that is used to treat opioid dependence by controlling withdrawal symptoms and helping opioid-dependent patients refrain from drug use.

[4] DoS consists of a number of agencies, including the BPOA, PHMP, and BoN, that regulate licensed professionals.

3

sessions. Reynolds ultimately failed to meet her treatment attendance requirements, and, in November 2005, A Better Today informed PHMP that she had been discharged due to this non-compliance.

Harris closed Reynolds's VRP file and forwarded it to the BPOA for review and the initiation of formal disciplinary proceedings. The BoN ordered that Reynolds be evaluated by a nationally respected addiction specialist who ultimately issued an August 30, 2006 report concluding that Reynolds "is able to practice nursing with the requisite skill and safety provided she is monitored for a time to be determined by the Board." App. 380 (emphasis in original). On October 5, 2006, the BPOA filed an order directing Reynolds to show cause why her license should not be suspended, revoked, or otherwise restricted in light of the fact that she was not being monitored as the addiction specialist deemed necessary.

Instead of answering the order to show cause, Reynolds entered into a Consent Agreement, approved by the BoN on January 7, 2007, under which Reynolds was permitted to continue to practice on a probationary status provided that she: (1) forward to PHMP a copy of an initial evaluation and subsequent treatment reports by a PHMP-approved provider; (2) obtain written verification of support-group attendance; (3) submit to random drug tests as directed by PHMP; and (4) pay all costs incurred in complying with the Consent Agreement.

Harris referred Reynolds back to A Better Today, and she was evaluated on

4

January 15, 2007. A Better Today informed Harris that Reynolds was opioid and benzodiazepine dependent, and that, although Reynolds was directed and agreed to enter into an inpatient methadone detox program before being admitted to outpatient therapy,[5] Reynolds "failed to follow through and made repeated calls to A Better Today in which she sounded impaired," App. 412, and A Better Today "discontinued the unsuccessful clinical process" on January 31, 2007. Id.

On March 5, 2007, Harris sent Reynolds a letter notifying Reynolds of her non-compliance with the Consent Agreement due to her failure to: (1) provide releases for information and other materials related to her evaluation and treatment; (2) set up and provide random drug screens; (3) provide support group verification sheets since entering the program in January 2007; and (4) ensure that written reports were sent to PHMP by her employer and treatment providers. On April 24, 2007, Harris reported these violations to the DoS Prosecution Division and informed Reynolds of that report. The DoS Prosecution Division thereafter submitted a petition to the Probable Cause Screening Committee of the BoN, which issued a preliminary order suspending Reynolds's license.

Reynolds filed an answer, and on July 11, 2007, a BoN hearing examiner held a hearing. The parties stipulated that Reynolds violated the Consent Agreement, and Reynolds used the hearing as an opportunity to present mitigating evidence in an attempt

---

[5] The particular rapid detoxification program A Better Today recommended was viewed, even by Defendants' expert, as inappropriate for a patient on methadone maintenance treatment, as it would be "extremely uncomfortable for the patient and could result in significant medical complications." App. 168.

to preserve her license, testifying that her husband had recently passed away and that, because of financial difficulty, she was unable to pay the costs of the drug screening. Reynolds further stated that she disagreed with the conclusion that she was required to wean off methadone in order to safely practice and that such a detox would be very difficult for her, but that she would be committed to being detoxed from methadone if she had no other choice in order to keep her license.[6]

On August 10, 2007, the BoN hearing examiner issued a decision and proposed order, finding that Reynolds violated the Consent Agreement because she had (1) failed to enroll in the random drug-screening program; (2) failed to submit monthly verification that she was attending support-group meetings; and (3) failed to comply with the treatment recommendation that she enter inpatient treatment in order to be weaned from methadone. The examiner ordered that Reynolds's license be suspended for three years, with the opportunity to stay the suspension and reinstate her license once Reynolds

---

[6] At that time, PHMP had a policy stating that

> any licensee assessed by a PHMP-approved provider . . . in need of ongoing methadone maintenance will be declared ineligible to participate in the PHMP. **Such licensees will be referred to the Board, with the recommendation that the Board consider any individual requiring maintenance on methadone as unfit to practice**. . . . Once effectively withdrawn from methadone dependence, the licensee may not reenter a program of ongoing methadone maintenance unless referred by the PHMP-approved provider.

App. 381 (emphasis in original). As discussed infra, this policy was changed less than one year later.

"provides the Board with an evaluation from a PHMP approved treatment provider that she is safe to practice nursing." App. 458.

Neither party filed exceptions to the hearing examiner's proposed order, and the BoN adopted it as its final order on September 18, 2007. No appeal was taken from the order. Harris reopened Reynolds's file following the final order, and in November 2007, Harris directed Reynolds once more to seek an evaluation and treatment from A Better Today. There is no evidence that Reynolds contacted A Better Today or had any further interaction with this provider.

In February 2008, Dr. William Santoro, an addiction medicine specialist who treated Reynolds at New Directions Treatment Services, her methadone maintenance provider, contacted A Better Today to discuss Reynolds's treatment and express concern about the recommendation that Reynolds be rapidly withdrawn from methadone. After speaking with A Better Today, Dr. Santoro wrote a letter to Harris expressing his concern that A Better Today was biased against treating addictions with medication such as methadone. Dr. Santoro requested that Reynolds be sent to another program that would consider all scientifically proven methods of treatment. Harris never responded to that letter.

On March 5, 2008, Harris sent Reynolds a letter explaining that, in response to a message from Reynolds, she was trying to contact her, but Reynolds's phone had a block in place. She therefore requested that Reynolds call PHMP. Having received no call, and

hence no opportunity to discuss Dr. Santoro's letter with her, and in light of Reynolds's apparent noncompliance with the treatment program, on March 13, 2008, Harris sent a letter to Reynolds informing her that her PHMP file had been closed, and that in order to reopen the file, A Better Today had to send PHMP a statement "indicating that you have fully and completely complied and cooperated with recommendations to enter inpatient treatment to be weaned from methadone." App. 416.

In April 2008, Glen Cooper, the executive director of New Directions Treatment Services, contacted Defendants on behalf of Reynolds to raise concerns regarding PHMP's policy that requires a nurse to be abstinent from methadone before the nurse will be permitted to return to the practice of nursing. Defendants met with Cooper on May 5, 2008, to discuss changing their methadone policy, and in June 2008, PHMP revised the policy to remove the blanket prohibition on methadone use by licensees and provide an individual determination of fitness to practice for those on methadone maintenance treatment. Defendants advised Cooper and Dr. Santoro of this change. There is no evidence that Reynolds contacted PHMP after this date to take advantage of the new policy.

Reynolds filed a Complaint against Defendants on August 4, 2009, amending it in November 2009. The Amended Complaint seeks a declaration that Defendants' policy of excluding nurses who are in a methadone maintenance program from licensing violates Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the RA, 29 U.S.C. § 794, as

8

well as injunctive relief and damages.

Defendants filed a motion to dismiss, which was granted in part with respect to the claims for damages against the individual defendants,[7] but was denied as to Defendants' request that the District Court abstain from deciding the case on Younger[8] abstention grounds. The District Court also denied Defendants' motion for reconsideration or to certify for interlocutory appeal.

After discovery, Plaintiff and Defendants cross-moved for summary judgment: Plaintiff for partial summary judgment that the methadone policy was illegal under the ADA and RA, and Defendants for summary judgment in their favor on all claims. The District Court granted Defendants' motion for summary judgment and denied Plaintiff's motion. This appeal followed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's order granting summary judgment.[9] Jacobs Constructors, Inc. v. NPS Energy

---

[7] On appeal, Plaintiff does not challenge the ruling relating to the liability of the individual defendants for damages. Moreover, Reynolds's death rendered her request for injunctive relief moot. See James v. Richman, 547 F.3d 214, 217 (3d Cir. 2008).

[8] Younger v. Harris, 401 U.S. 37 (1971).

[9] We have jurisdiction to review the District Court's summary judgment ruling only. We do not address Defendants' argument that the District Court erred by not abstaining from hearing this case under the Younger abstention doctrine, as "[i]t is axiomatic that any party contesting an unfavorable order or judgment below must file an appeal," EF Operating Corp. v. American Buildings, 993 F.2d 1046, 1048 (3d Cir. 1993),

Servs., Inc., 264 F.3d 365, 369 (3d Cir. 2001).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In reaching this decision, the Court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law."  Macfarlan v. Ivy Hill SNF, L.L.C., 675 F.3d 266, 271 (3d Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  A disputed issue is "genuine" only "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A factual dispute is "material" only if it might affect the outcome of the suit under governing law. Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011) (citing Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson, 477 U.S. at 247-49.  "In making this determination, we must

---

and Defendants here failed to file a cross-appeal in order to challenge the District Court's denial of its motion to dismiss.  A grant of summary judgment and a dismissal due to abstention are "wholly different forms of relief"—indeed, the Defendants' dismissal argument "seeks to vacate the summary judgment"—and Defendants are required to file a cross-appeal in order to seek such relief.  Id. at 1049.

10

consider the evidence in the record in the light most favorable to the nonmoving party."

Jacobs Constructors, Inc., 264 F.3d at 369 (citing Anderson, 477 U.S. at 248).

III.

Because essentially the same standards govern both the ADA and RA claims, the Court may simultaneously address both claims. McDonald v. Pennsylvania, 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the [RA] or under the [ADA], the substantive standards for determining liability are the same." (citation omitted)). To prevail on a violation of either of those statutes,[10] Plaintiff must demonstrate that Reynolds: (1) had a disability as defined under the statute;[11] (2) was otherwise qualified to hold a nursing license; and (3) by reason of such disability, was excluded from retaining her nursing license.[12] See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009).

---

[10] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

[11] Drug addiction is included within the meaning of disability under both the ADA and the RA where the impairment is not due to the "current illegal use of drugs." 28 C.F.R. § 35.104(5)(iii).

[12] Title II of the ADA only applies to discrimination by a "public entity," which is defined as "any department, agency, special purpose district, or other instrumentality of

As we explained in C.G. v. Pennsylvania Department of Education, 734 F.3d 229, 235 (3d Cir. 2013), one of the only differences between claims under the ADA and the RA is their standards for causation. See 42 U.S.C. § 12132 ("by reason of such disability"); 29 U.S.C. § 794(a) ("solely by reason of her or his disability"). "The RA allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program solely on the basis of disability, while the ADA covers discrimination on the basis of disability, even if there is another cause as well." C.G., 734 F.3d at 235-36. Thus, while a disability must be the "sole cause" of the alleged discrimination under the RA, a plaintiff may succeed under the ADA "so long as disability '. . . had a determinative effect on the outcome,'" and thus was the "but for" cause of the adverse action. Id. at 236 n.11 (quoting New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 300 n.4 (3d Cir. 2007)).

Here, the District Court correctly applied the "but for" causation standard and found that while Reynolds's failure to be weaned off methadone was one of the reasons she was found not to be in compliance with her Consent Agreement, there were two other violations of the Consent Agreement—failure to enroll in the random drug-screening program and failure to submit monthly verification that she was attending support-group

a State . . . ." 42 U.S.C. § 12131(1)(B). No party disputes that Defendants are all "public entit[ies]."

The RA requires the additional showing that the program receives federal financial assistance. 29 U.S.C. § 794(a). No party disputes that DoS receives federal financial assistance and the other Defendants are part of DoS.

meetings—which would in and of themselves be sufficient for a suspension. Reynolds stipulated to these violations in her proceeding before the BoN, and the hearing examiner identified them as the reason for suspension. Thus, PHMP's methadone policy was not a "but for" factor in the decision to suspend Reynolds's license or why it was not reinstated.

Plaintiff argues that the District Court wrongly narrowed its review to the BoN order suspending Reynolds's license and ignored the fact that PHMP's methadone policy prohibited her from being able to get that license back because the BoN required Reynolds to be monitored by PHMP and provide an evaluation from a PHMP-approved treatment provider in order to stay the suspension. Even if the District Court did not consider that argument, there is no evidence that Reynolds did anything to comply with the BoN order after it became final in September 2007. There is no record of Reynolds contacting A Better Today and attempting to fulfill even part of their program. Likewise, there is no evidence showing Reynolds attempted to re-open her file with PHMP after the June 2008 policy change, despite the fact that her New Directions care providers were made aware of it. Plaintiff is therefore unable to show that it was PHMP's methadone

13

policy,[13] and not Reynolds's own inaction, that prevented her from regaining her license.[14]

IV.

For the foregoing reasons, we will affirm the grant of summary judgment in favor of Defendants and the denial of Plaintiff's motion for partial summary judgment.

---

[13] The District Court did not make any ruling on whether PHMP's methadone policy violated the ADA and/or the RA, and we likewise do not reach that issue.

[14] For the same reasons, the methadone detoxification requirement was not the sole reason her license was suspended.