**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1887
_____

MANHUA MANDY LIN, Doctor,
                                          Appellant

v.

ROHM AND HAAS COMPANY,
DBA Dow Advanced Materials

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-11-cv-03158)
District Judge: Hon. Legrome D. Davis

_____

Argued: March 16, 2017
_____

Before: GREENAWAY, JR., SHWARTZ, GREENBERG, <u>Circuit Judges</u>.

(Filed:  April 14, 2017)

Stephen L. Braga, Esq.
Ajani Brown [ARGUED]
Brandon Christensen [ARGUED]
University of Virginia Law School
580 Massie Road
Charlottesville, VA 22903

William J. Fox, Esq.
1219 Spruce Street
Philadelphia, PA 19107

Counsel for Appellant

Jason A. Cabera, Esq.
Philip G. Kircher, Esq.
Raymond A. Kresge, Esq. [ARGUED]
Cozen O'Connor
1650 Market Street
One Liberty Place, Suite 2800
Philadelphia, PA 19103

Counsel for Appellee

_____

OPINION[*]

_____

SHWARTZ, <u>Circuit Judge</u>.

Manhua "Mandy" Lin sued Rohm and Haas Company for retaliating against her in violation of Title VII, 42 U.S.C. § 2000e-3(a) and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955(d).  Following an eleven-day bench trial, the District Court entered judgment in favor of Rohm and Haas.  For the reasons set forth below, we will affirm.

I[1]

A

The parties' dispute has a long history.  In 1989, Rohm and Haas hired Lin to work as a senior scientist.  In 1995, Lin was tasked with producing a catalyst to convert

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We recite only those facts necessary to decide this appeal.  We accept as true the facts found by the District Court to the extent those factual findings are unchallenged. <u>CG v. Pa. Dep't of Educ.</u>, 734 F.3d 229, 234 (3d Cir. 2013).

propane to acrylic acid ("AA"). Lin successfully produced such a catalyst, Rohm and Haas patented the discovery, and Lin was listed as an inventor.

Lin subsequently began to work with a modified version of the catalyst at the request of one of her supervisors, Scott Han. Lin researched the potential use of this modified catalyst in converting propane to AA, while Han and other scientists, led by Fernando Cavalcanti, explored using this modified catalyst to convert isobutane to methacrylic acid ("MAA"). Lin did not work on MAA-related research but was exposed to the research in meetings, through confidential reports, and in conversations with other scientists.

In early 1999, Lin filed a charge of discrimination against Rohm and Haas with the Equal Employment Opportunity Commission ("EEOC"). She alleged that she requested a promotion after making her discovery, but Rohm and Haas denied that request, "likening her to a 'monkey' that had accidentally invented something." App. 37. Lin and Rohm and Haas settled this charge and entered an agreement, which provided, among other things, that Lin would leave the company and not disclose Rohm and Haas's confidential information, unless she received permission from Rohm and Haas to do so. To this end, Lin agreed to identify the information she sought to use so that Han could review the material to determine if it contained trade secrets. If a dispute arose, Rohm and Haas's Chief Technology Officer, Charles Tatum, would conduct an additional review.

Before leaving Rohm and Haas, Lin met with Han to discuss her future publications and presentations. Han agreed that Lin could give a presentation at an

3

American Chemical Society ("ACS") conference in March 2000, provided that the presentation was limited to data predating 1996. Lin emailed Han an outline of her presentation. Both Han and Tatum reviewed it and concluded that it revealed post-1996 data. Han informed Lin of this conclusion and warned her that Rohm and Haas would consider legal action if she presented the post-1996 data. Despite this warning, Lin gave her presentation. Lin subsequently wrote a letter to the EEOC, complaining that Rohm and Haas had violated the EEOC settlement agreement by attempting to prevent her from giving the presentation.

In June 2000, Rohm and Haas sued Lin in the Montgomery County Court of Common Pleas, claiming that Lin had disclosed confidential information during her ACS presentation in violation of her fiduciary and contractual duties to the company. In response, Lin filed a second charge with the EEOC, alleging that Rohm and Haas filed the Montgomery County lawsuit in retaliation for her complaining to the EEOC about its efforts to prevent her from presenting her research. In April 2001, the Court of Common Pleas found that Lin had disclosed trade secrets during her ACS presentation and took confidential documents with her when she left the company, and preliminarily enjoined her from using Rohm and Haas's confidential information and from making any presentation or publication without approval from Han and/or Tatum after a 90-day trade secret review.

In August 2001, Lin filed a third charge of discrimination against Rohm and Haas with the EEOC. Lin claimed that Rohm and Haas had retaliated against her by delaying a

4

trade secret review of a presentation she had planned to give in Chicago, forcing her to cancel the presentation.

In June 2002, Lin sued Rohm and Haas in the United States District Court for the Eastern District of Pennsylvania based on her second and third EEOC charges. See Lin v. Rohm & Haas Co. ("Lin I"), 301 F. Supp. 2d 403 (E.D. Pa. 2004). Lin alleged that Rohm and Haas violated Title VII and the PHRA by seeking the preliminary injunction in retaliation for the charges she filed with the EEOC. Id. at 405-06. The court ultimately granted summary judgment in favor of Rohm and Haas. Id. at 406-07.

In March 2003, an outside lawyer for Rohm and Haas discovered an abstract for a grant proposal that Lin submitted to the Department of Energy ("DOE") for a project related to MAA. The abstract indicated that EverNu, a single-member LLC owned by Lin, would receive the grant money. The outside lawyer forwarded this abstract to James Vouros, an in-house intellectual property lawyer for Rohm and Haas who managed the Montgomery County litigation. Vouros asked Han and Cavalcanti for their opinions on the abstract, and both indicated that they were concerned that the proposal drew from Cavalcanti's research.

Rohm and Haas served Lin and EverNu with discovery demands in the Montgomery County litigation related to the DOE abstract. Both Lin and EverNu objected to the discovery and refused to comply with orders directing them to produce the documents, and the Court of Common Pleas ordered monetary sanctions, none of which were ever paid.

EverNu was scheduled to present at a DOE-sponsored exhibition and asked Rohm and Haas to agree that the preliminary injunction did not apply to EverNu's information. After Rohm and Haas refused, EverNu filed an emergency motion, asking the Court of Common Pleas to hold that EverNu was not bound by the injunction's trade secret review requirement. The Court of Common Pleas denied the motion. Nonetheless, EverNu, through Lin, presented the material at the exhibition.

In early 2006, Rohm and Haas sought discovery from Temple University, which provided research facilities and support to EverNu in exchange for twenty percent of its DOE grant money. In particular, Rohm and Haas sought to depose Daniel Strongin, a Temple chemistry professor who worked with EverNu, and sought all documents related to Lin and Strongin's work on the DOE project.

After a court ruling compelling production, Temple produced the documents in its possession related to the DOE project with EverNu, but the production was limited because Lin had moved her operation from Temple to Villanova University in 2004 and had taken most of her research with her. Han and Cavalcanti reviewed the Temple documents. They were concerned that the documents contained Rohm and Haas's confidential information but lacked sufficient information at that time to reach a concrete conclusion. Their concerns were well founded. During Strongin's March 2007 deposition, Rohm and Haas showed Strongin two confidential research documents related to Cavalcanti's MAA research at Rohm and Haas. Strongin testified that the chemistry in those documents looked similar to the chemistry used in his work with Lin.

During a break on the second day of Strongin's deposition, Vouros and Mari Shaw, lead outside counsel for Rohm and Haas, orally extended a settlement offer to Hugh Hutchison, Lin's counsel, and John Chesney, EverNu's counsel.[2] Rohm and Haas offered to drop the Montgomery County litigation and waive all of the accumulated sanctions if (1) EverNu granted Rohm and Haas a royalty-free, nonexclusive patent license to any MAA technology it patents in the future and (2) Lin granted Rohm and Haas a general release from all current or future claims, including EEOC charges. According to Hutchison and Chesney, Vouros threatened to destroy EverNu's relationship with the DOE if Lin declined the settlement offer. Vouros denied making this threat.[3] In any event, Lin rejected the offer, and the Montgomery County litigation continued.

In the course of the Montgomery County litigation, Rohm and Haas produced to Lin forty-five pages of documents reflecting Cavalcanti's 1999 MAA research. These documents were subject to a confidentiality stipulation, which prohibited Lin from sharing the documents with anyone without Rohm and Haas's consent. Nevertheless, Lin sent the forty-five pages of documents to the DOE without informing Rohm and Haas or the Court of Common Pleas, and she asked the DOE to compare the information in those forty-five pages to her DOE proposal and determine if there was any overlap. In

---

[2] At trial, Vouros testified that he did not believe Chesney was present during this settlement discussion. However, both Chesney and Hutchison testified that Chesney was present.

[3] Rohm and Haas indicated that Shaw would also testify about her recollection of this settlement conversation. However, Rohm and Haas ultimately did not call Shaw to testify.

7

December 2007, Vouros learned about the unauthorized disclosure from a newspaper article, contacted the DOE, and the DOE returned the documents.

Around this same time, Rohm and Haas moved for a default judgment against Lin in the Montgomery County litigation due to her noncompliance with discovery. In May 2008, the Court of Common Pleas granted Rohm and Haas's motion and, among other things, (1) permanently enjoined Lin from using or disclosing any information Rohm and Haas considers to be confidential or a trade secret, and (2) required Lin to submit to a 90-day trade secret review with Rohm and Haas for any presentation, publication, or proposal for three years.

Vouros informed the DOE of the default judgment, and requested information about EverNu's DOE-funded project and the DOE's planned course of action with respect to Lin and EverNu, including whether the DOE had stopped all funding of Lin's project.[4] The DOE told Vouros that it had made only one award to EverNu with respect to MAA, that all research under the grant had been completed in June 2006, and that the DOE had no plans to award EverNu additional funds.

B

---

[4] Vouros contacted the DOE about Lin and EverNu several times, from December 2007, when Rohm and Haas learned about Lin's unauthorized disclosure of confidential information to the DOE, through August 2008, when he inquired as to whether the DOE had stopped funding Lin and EverNu's project and whether any DOE funds destined for EverNu could be forwarded to Rohm and Haas to pay the outstanding sanctions.

Simultaneous with Lin's failure to produce discovery in the Montgomery County litigation, Lin filed her fourth charge of discrimination with the EEOC, which is the charge underlying this case. Lin alleged that Rohm and Haas was retaliating against her for filing charges with the EEOC by serving burdensome discovery requests on her and EverNu in the Montgomery County litigation. The EEOC sent this fourth charge to Rohm and Haas's employment law group, of which Vouros was not a member. In October 2004, Raymond Kresge, Rohm and Haas's outside counsel who had represented the company in Lin I, wrote a letter to the EEOC, arguing that the dispositive issue in the charge had already been decided in Lin I. In December 2004, the EEOC dismissed the charge for lack of jurisdiction. Lin challenged the EEOC's dismissal. In March 2005, the EEOC agreed to reconsider its jurisdiction, and Kresge submitted a letter to the EEOC in opposition to the reconsideration. In April 2007, the EEOC concluded that it had jurisdiction over Lin's charge.[5]

In March 2011, the EEOC issued a right-to-sue letter to Lin, and she subsequently filed this lawsuit against Rohm and Haas in the United States District Court for the Eastern District of Pennsylvania. The District Court conducted a bench trial on Lin's Title VII and PHRA retaliation claims and issued a sixty-three page opinion setting forth its findings of fact and conclusions of law. The District Court credited Vouros's version

_____

[5] At trial, Vouros testified that he did not remember learning of the fourth EEOC charge until the Spring of 2007, when he ran into Kresge on the street and Kresge informed him that the EEOC had decided to exercise jurisdiction over the charge. However, Lin established that Vouros had sent an email with respect to the fourth EEOC charge in April 2005, and Vouros conceded that he must have known of the charge at that time.

9

of events, finding that Vouros's actions in directing the Montgomery County litigation, including the discovery demands, were motivated by a good faith belief that Lin may have been using Rohm and Haas's confidential information and thus jeopardizing its intellectual property. Similarly, the District Court concluded that Vouros contacted the DOE because of his reasonable belief that Lin was using Rohm and Haas's confidential information in her DOE-funded work. Therefore, the District Court found that Rohm and Haas had legitimate, non-discriminatory reasons for taking those actions, and Lin failed to prove that her filing of charges with the EEOC was the but-for cause of the adverse actions taken against her. The District Court then entered judgment in favor of Rohm and Haas on Lin's Title VII and PHRA claims. The District Court subsequently denied Lin's post-trial motions. Lin appeals.[6]

## II[7]

### A

"When reviewing a judgment entered after a bench trial, we exercise plenary review over the District Court's conclusions of law and review the District Court's findings of fact for clear error." CG v. Pa. Dep't of Educ., 734 F.3d 229, 234 (3d Cir. 2013) (citation omitted). A trial court's finding with respect to the existence of intentional discrimination is a finding of fact, Anderson v. City of Bessemer City, 470

---

[6] Lin requests that we remand this case for a new trial. The District Court, however, determined that Lin waived her motion for a new trial by failing to present any argument in support of such a request in her post-trial motions. Lin does not challenge this conclusion on appeal.

[7] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

10

U.S. 564, 573 (1985), which "must not be set aside unless clearly erroneous," Fed. R. Civ. P. 52(a)(6). A finding of fact is clearly erroneous where "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson, 470 U.S. at 573 (citation and internal quotation marks omitted).

We give great deference to factual findings that rest on credibility determinations because the trial judge is in a "superior[ ] . . . position to make determinations of credibility," given that, unlike an appellate judge, "the trial judge [is] aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Id. at 574-75; see also Fed. R. Civ. P. 52(a)(6) (stating that a "reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility"); Dardovitch v. Haltzman, 190 F.3d 125, 140 (3d Cir. 1999) (explaining that because "[t]he credibility of witnesses is quintessentially the province of the trial court, not the appellate court," a trial court's finding on credibility may be rejected only in "rare circumstances"). Therefore, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson, 470 U.S. at 575; see also id. at 574 (stating that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous").

B

To prevail on claims under Title VII and the PHRA, a plaintiff must prove that "(1) she engaged in [protected] activity . . . (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Phila., 461 F.3d 331, 340–41 (3d Cir. 2006) (citation and internal quotation marks omitted); Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006) (noting that PHRA claims "are interpreted coextensively with Title VII claims" (citation omitted)). The District Court concluded that Lin had engaged in protected activity by filing charges of discrimination with the EEOC and that Rohm and Haas had taken adverse actions against her by pursuing the Montgomery County litigation and contacting the DOE. Those conclusions are not challenged on appeal.

Rather, this appeal concerns only whether Lin proved that her protected activity was the but-for cause of the adverse actions taken against her. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."); Marra v. Phila. Hous. Auth., 497 F.3d 286, 301 n.11 (3d Cir. 2007) ("[T]he burden of persuading the trier of fact that the defendant intentionally retaliated against the plaintiff remains at all times with the plaintiff." (citation omitted)). The District Court found that she had not and that Rohm and Haas was at all times motivated by a good faith belief that Lin may have been improperly using Rohm and Haas's confidential information. In her appeal of this ruling, Lin raises a

single issue: "Whether the district court's decision to credit Vouros' testimony that [Rohm and Haas's] actions were not motivated by any retaliatory intent against Lin was clearly erroneous." Appellant's Br. 3.

In support of her position that the District Court clearly erred in crediting Vouros's testimony, Lin argues: (1) Vouros's testimony contained gaps in knowledge and inconsistencies and was not supported by other evidence in the record, (2) the District Court should have drawn an adverse inference against Vouros's testimony because Rohm and Haas failed to produce Shaw as a witness, and (3) the District Court cannot assume that Vouros lied on the witness stand and yet choose to credit his testimony about other aspects of the case.[8] We will address these arguments in turn.

1

---

[8] Lin also argues that the District Court erred in limiting the evidence she could offer to events that occurred after January 2005. The District Court imposed a time-based limitation on the evidence because it determined that claims arising from before 2005 were barred by res judicata due to the resolution of Lin I. The District Court, however, permitted the parties to offer evidence from the pre-2005 period as background information. While Lin does not challenge the District Court's res judicata ruling on appeal, she contends that she should have been allowed to offer evidence from the pre-2005 period to establish a course of conduct indicative of Rohm and Haas's retaliatory intent. As Rohm and Haas correctly observes, however, this argument is waived because Lin did not list this issue as an "issue presented" by this appeal in her opening brief. See Appellant's Br. 3; see also Nagle v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993) ("When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal." (citations omitted)); Simmons v. City of Phila., 947 F.2d 1042, 1065 (3d Cir. 1991) (noting that an appellant's brief "must contain statements of all issues presented for appeal, together with supporting arguments"). Even if the issue is not waived, the District Court did not abuse its discretion in limiting the evidence, and, in any event, any error in limiting this evidence was harmless, as the District Court permitted and considered a substantial amount of pre-2005 evidence at trial.

13

Lin argues that the District Court clearly erred in crediting Vouros's testimony because his testimony was inconsistent, implausible, and contradicted by the evidence. First, Lin notes that Vouros testified that he did not learn of her fourth EEOC charge until he saw Kresge in the Spring of 2007, when in fact he sent an email about the charge in April 2005. Although Vouros had apparently learned about the charge before he ran into Kresge in 2007, it is unsurprising that he would remember his chance encounter with Kresge more clearly than a single email he had sent about the case. As the District Court noted, Vouros sent the April 2005 email almost a decade prior to the time he testified at trial. The District Court did not clearly err in finding that Vouros credibly testified to the best of his recollection about when he knew of Lin's fourth EEOC charge.

Second, and relatedly, Lin argues that the District Court clearly erred in concluding that Vouros did not monitor the progress of the fourth EEOC charge because he had been involved in Rohm and Haas's dispute with Lin from the beginning. There is undoubtedly some evidence, such as the April 2005 email, to indicate that Vouros had knowledge of Lin's fourth EEOC charge, but this does not show he played an active role in or even monitored the charge. The evidence showed that the EEOC sent notice of Lin's fourth EEOC charge to Rohm and Haas's employment law group, of which Vouros was not a member. Further, the evidence indicated that the fourth EEOC charge was stagnant until April 2007 when the EEOC ultimately decided that it had jurisdiction over the charge, and Vouros did not litigate the jurisdictional issue. Accordingly, there was ample evidence to permit the District Court to conclude that Vouros did not actively monitor the progress of Lin's fourth EEOC charge. See Anderson, 470 U.S. at 574

14

(holding that a factfinder's choice between two permissible views of the evidence cannot be clearly erroneous).

Third, Lin argues that Vouros's consistent failure to recall information about topics that would have been under his purview at Rohm and Haas severely undermined his credibility as a witness. However, as noted above, Vouros's lack of recollection about specific aspects of the numerous disputes between Lin and Rohm and Haas is hardly surprising or suspicious given their unusually lengthy history and the gaps in time between many of the relevant events and the trial. The District Court, therefore, did not clearly err in finding Vouros credible despite his lapses in memory.[9]

2

Lin notes that Rohm and Haas stated that it would produce Shaw as a witness to testify about the March 2007 settlement proposal discussion in which Vouros allegedly threatened to destroy EverNu's relationship with the DOE, but it did not call her. Because Rohm and Haas never called Shaw as a witness, Lin argues that the District Court should have drawn an adverse "missing witness" inference against Rohm and Haas. The missing witness inference is "based on the simple proposition that if a party who has evidence which bears on the issues fails to present it, it must be presumed that such evidence would be detrimental to his cause." United States v. Hines, 470 F.2d 225, 230 (3d Cir. 1972) (citation and internal quotation marks omitted). Accordingly, a factfinder could infer that the missing witness's testimony would have been adverse, or,

_____

[9] We have also considered the other purported inconsistencies in Vouros's testimony that Lin identified in her brief. None provides a basis to conclude that the District Court clearly erred in its credibility determination.

15

at the least, not helpful to the party who declined to produce the witness. Id. Here, the District Court assumed that Vouros threatened to destroy EverNu's relationship with the DOE during the March 2007 settlement discussion and therefore effectively adopted the version of events Lin proffered. By making this assumption, the Court did more than draw an inference that Shaw's testimony would have undermined Vouros's account of the settlement discussion. Rather, it assumed Vouros's account was not truthful. In this circumstance, a missing witness inference was unnecessary, and the District Court did not err in declining to draw any inference from Shaw's absence.

3

Lin also argues that the District Court erred in finding that Vouros was generally credible despite assuming that he testified falsely about the settlement discussion. Where a factfinder concludes that a witness has testified falsely concerning one matter, the factfinder may either reject the remainder of the witness's testimony or may credit those parts of the witness's testimony believed to be true. See Lambert v. Blackwell, 387 F.3d 210, 256 (3d Cir. 2004). Thus, the District Court was not required to conclude that Vouros testified falsely about any other event in the case merely because it assumed he testified falsely about the settlement discussion.

Moreover, even if the District Court found, instead of simply assumed, that Vouros made the threat and that Vouros made good on this threat by contacting the DOE about EverNu, such findings would not establish that Vouros's actions were motivated by an intent to retaliate against Lin for filing charges with the EEOC. Indeed, there is no evidence that Rohm and Haas or Vouros acted in retaliation for Lin's EEOC charges. To

16

the contrary, the evidence established that Lin took numerous actions that provoked Vouros's well-founded concern that she was using Rohm and Haas's confidential information, including (1) presenting confidential information at the ACS conference despite Rohm and Haas's explicit directive that she could not, (2) taking confidential documents with her when she left Rohm and Haas, (3) submitting a grant proposal to the DOE that appeared to draw on Cavalcanti's research, (4) refusing to respond to any discovery in the Montgomery County litigation despite numerous court orders, (5) presenting at the DOE-sponsored exhibition despite orders from both Rohm and Haas and the Court of Common Pleas that she could not, and (6) submitting forty-five pages of Rohm and Haas's confidential information to the DOE in violation of the confidentiality stipulation entered in the Montgomery County litigation. As a result, the District Court's conclusion that Vouros, on behalf of Rohm and Haas, was motivated only by a legitimate concern that Lin may have been using Rohm and Haas's confidential information was well-supported and not erroneous.

## III

For the foregoing reasons, we will affirm the judgment of the District Court.