**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3007
_____

SECRETARY UNITED STATES DEPARTMENT OF LABOR,
Appellant

v.

CENTRAL LAUNDRY INC., d/b/a Olympic Linen, a Corporation; GEORGE
RENGEPES, Individually and as a owner of the aforementioned corporation; JIMMY
RENGEPES, Individually and as a owner of the aforementioned corporation

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-01502)
District Judge: Hon. Wendy Beetlestone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 1, 2019
_____

Before: SHWARTZ, FUENTES, and FISHER, Circuit Judges.

(Filed: October 11, 2019)

_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

SHWARTZ, Circuit Judge.

The Secretary of the United States Department of Labor ("the DOL") sued Central Laundry d/b/a Olympic Linen and its owners ("Central Laundry") for violations of the Fair Labor Standards Act ("FLSA"). The District Court entered summary judgment against Central Laundry on liability and, after a bench trial, awarded certain employees back wages. The DOL appeals several of the Court's backpay calculations. Because the DOL showed that some employees are entitled to additional back wages, we will affirm in part, reverse in part, and remand.

I[1]

Central Laundry is an industrial laundry facility in Pennsylvania. During the three-year period from March 2012 to March 2015 ("the relevant period"), Central Laundry employed several production floor workers ("floor employees") who it paid in cash. In 2011 and 2012, Central Laundry paid these employees between $5.00 and $7.00 an hour; in 2013 and 2014, Central Laundry paid them between $6.00 and $8.00 an hour.

As part of the investigation, a DOL investigator interviewed thirteen floor employees ("interviewed employees") and collected Central Laundry's employment records. Central Laundry produced only 255 time cards for ten cash-paid employees ("time card employees") from the relevant period, despite using a time card machine

---

[1] We accept as true the facts found by the District Court to the extent those factual findings are unchallenged. CG v. Pa. Dep't of Educ., 734 F.3d 229, 234 (3d Cir. 2013). We also draw from the joint statement of stipulated facts.

2

since 2001.[2]  Central Laundry likewise produced records from an hour-recording device known as a "hand scanner" for one week's worth of work performed by eleven workers ("hand scanner employees").[3]  None of the time card or hand scanner records Central Laundry produced for the cash-paid floor employees included the employees' last names, and Central Laundry did not track employee start and end dates.  Central Laundry also produced records for three employees who were issued weekly payroll checks ("payroll employees").

The DOL brought suit and, following discovery, the District Court granted the DOL partial summary judgment, concluding that Central Laundry violated the FLSA. Following a bench trial on remedies, the Court concluded, among other things,

- of the nine time-record employees, four were entitled to minimum wage and overtime back wages for the relevant period, Acosta v. Cent. Laundry, Inc., No. 15-1502, 2018 WL 1726613, at *7-8 (E.D. Pa. April 10, 2018), while the remaining five were entitled only to minimum wage and overtime back wages for the time periods that aligned with the documents because the Court could not "make extrapolations from these employees' few time cards that had relatively short time horizons,"[4] id. at *8-9.

---

[2] The DOL interviewed one of the ten time card employees, and like the District Court, we will include her as an "interviewed employee" rather than a "time card employee" in our analysis.  See Acosta v. Cent. Laundry Inc., No. 15-1502, 2018 WL 1726613, at * 5-6 n.6 (E.D. Pa. Apr. 10, 2018).

[3] These records came from a two-week period of hand scanner usage in January 2014.  Though some time card employees are also included in the hand scanner records, the "hand scanner employee" category includes only workers who appear solely in the hand scanner records.

[4] For the four time card employees who received backpay for the full period, the Secretary used between 21 and 68 time cards per employee reflecting work performed over the course of at least two years for each employee to show duration of employment. Acosta, 2018 WL 1726613, at *6 n.7.  For the remaining five, the Court awarded backpay based only on the periods reflected in the time cards Central Laundry had produced.  For example, one employee had eight time cards covering a span of 14 weeks.  Id. at *8 n.10.

3

- none of the eleven hand scanner employees were entitled to back wages because the hand scanner records could not support the DOL's inference that they worked for Central Laundry for the full three-year period, and the investigator could not definitively testify that they were paid in cash or that they even worked at Central Laundry, id. at *10; and

- the three payroll employees were not entitled to back pay for two purportedly uncompensated fifteen-minute rest periods per day during the relevant time period because two of the employees declared that their paychecks were always correct, and the DOL failed to adduce any evidence to support its allegation that Central Laundry failed to pay these workers during rest periods, id. at *6.

Based on these conclusions, the Court entered a judgment against Central Laundry for $239,269.65 in back wages and $239,269.65 in liquidated damages under 29 U.S.C. § 216(b). Id. at *10. The DOL appeals the District Court's backpay determinations for the five time card employees who received partial awards, the eleven hand scanner employees who did not receive awards, and the three payroll employees who did not receive awards for their alleged unpaid rest breaks.

II[5]

---

The Court granted her backpay for all 14 weeks. Id. at *9 (discussing award for Carmen LNU). The other four employees had either one or two time cards, and were granted backpay for the one or two week periods these time cards covered. Id. at *8-9 & n.10.

[5] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1345, and 29 U.S.C. § 217. We have jurisdiction under 28 U.S.C. § 1291.

"When reviewing a judgment entered after a bench trial, we exercise plenary review over the District Court's conclusions of law . . . ." CG, 734 F.3d at 234 (citation omitted). "The factual findings underlying the district court's computation and award of back wages are subject to the clearly erroneous standard." Martin v. Selker Bros., Inc., 949 F.2d 1286, 1292 (3d Cir. 1991). A finding of fact is clearly erroneous where "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (citation and internal quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 574 (citations omitted).

4

For FLSA claims, the DOL bears "the burden of proving that [an employee] performed work for which he was not properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds, Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251-262, as recognized by IBP, Inc. v. Alvarez, 546 U.S. 21, 25-26 (2005); see also 29 U.S.C. § 211(a) (authorizing the DOL to bring actions for FLSA violations). This burden is more difficult to meet where an employer, like the one here, has failed to keep adequate records of the "wages, hours, and other conditions and practices" under 29 U.S.C. § 211(c). Martin v. Selker Bros., Inc., 949 F.2d 1286, 1296-97 (3d Cir. 1991). Thus, where recordkeeping FLSA violations have occurred, rather than "penaliz[ing] the employees by denying recovery based on an inability to prove the extent of undercompensated work," the DOL may "submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred." Id. at 1297.

As a result, compensation calculations featuring "imprecision[s]" arising from recordkeeping failures do not defeat recovery. Id. Calculations based on "mere speculation," however, do not provide a basis for relief. Rosano v. Township of Teaneck, 754 F.3d 177, 189 (3d Cir. 2014) (citation omitted). Where the DOL produces evidence from which a fact finder may reasonably infer the amounts due to the employer, the burden shifts to the employer to "come forward with evidence of the precise amount of earnings received and work performed by the [employees] or with evidence to negate the district court's reasonable inferences based on the evidence." Selker Bros., Inc., 949 F.2d at 1297 (citing Mt. Clemens, 328 U.S. at 687-88).

5

We will first examine the conclusions concerning time card employees. The District Court did not clearly err in concluding that the DOL failed to carry its burden with respect to three of the five employees who were denied backpay. As the Court noted, it could not draw a reasonable inference that the employees in question worked for the full three-year period based solely on the small number of paychecks provided. For three of these employees, the paychecks were the only evidence the DOL presented. For the two other time card employees, however, coworkers attested to working with them at various times during the relevant period. Specifically, three different employees, who collectively worked at Central Laundry for various periods from 2007 to 2014, testified or declared that they worked with "Marcos," who is likely time card employee "Marco." App. 929-30, 1049, 1055, 1089-90. The parties also stipulated that Central Laundry hired "Marco Apanco Tepo" in 2013. App. 36. Because Central Laundry provided no evidence that it separately employed any "Marcos," and the record is sufficient to conclude that "Marco," App. 19, 38, is the Marco Apanco Tepo who worked at Central Laundry, see App. 1090, there is sufficient evidence to reasonably infer that "Marco" worked more than the single week the District Court credited to him. Likewise, one employee who worked at Central Laundry in 2013 and 2014, App. 11, 929, 1055, but see App. 37, testified that she worked with "Florencia," who is likely time card employee "Florencia."[6] App. 931.

---

[6] A hand scanner record also exists for Florencia for the week of January 24-30, 2014, further demonstrating that she likely worked for Central Laundry at times during the relevant period other than the two weeks for which Central Laundry produced time cards. App. 18, 751. Though a similar hand scanner record exists for "Flor," the DOL

Though neither "Marco" nor "Florencia" testified, "[i]t is not necessary for every single affected employee to testify . . . to recoup back wages." Selker Bros., Inc., 949 F.2d at 1298. Together with documentation, such as time cards, the testimony of coworkers who observed such employees at the jobsite provides a basis to infer the amount of time an employee worked. Here, the DOL provided a basis to reasonably infer that these two time card employees worked more than their one-to-two weeks of time card records.[7] Because the burden shifted to Central Laundry, and it provided neither evidence to rebut this inference nor a more precise calculation (as it also failed to do for the other time card employees, see Acosta, 2017 WL 1726613, at *7), we will reverse and remand for re-computation of back wages owed to "Marco" and "Florencia," but affirm the Court's judgment as to the time card employees in all other respects.

Turning to the hand scanner employees, the DOL has presented evidence from which it is reasonable to infer that these employees were underpaid for their work at Central Laundry. While the District Court's view of the DOL investigator's testimony did not provide a basis to infer that these employees "in fact performed work [for Central Laundry] for which they were not paid," the Court did not adequately consider other evidence, including (1) the parties' joint stipulation that "[d]uring some or all of the

_____

argues that this is a reference to "Florenta," another time card employee. As there is no evidence to show she worked before the single week documented in the time card, we cannot conclude that the Court clearly erred in awarding "Florenta" only one week of back pay.

[7] Though we conclude that "Marco" and "Florencia" are entitled to more backpay than they were awarded, we leave it to the District Court on remand to draw reasonable inferences, based on both the time cards available and evidence from their co-workers, as to the exact duration they worked.

relevant time period, Defendant Central Laundry employed" the hand scanner employees, App. 38; (2) that the hand scanner records contained handwritten payment computations that evinced payment below the applicable statutory minimum rate provided in 29 U.S.C. § 206(a), see, e.g., App. 740, 751 (showing pay computations for Florencia that demonstrate she was being paid $6 an hour and $9 an hour for overtime); App. 753 (same for Marla); 754 (same for Myra and Nudy); 755 (same for Ballentine); and (3) that some of the interviewed and time card employees who the Court found to be underpaid also had hand scanner records for the same period as the hand scanner employees, see, e.g., App. 748 (providing hand scanner record for Alejandra LNU, a time card employee who the Court held was entitled to $24,902.98 in back wages), 752-53 (providing hand scanner record for "Lupe," who could be Guadalupe Pina, an interviewed employee who the Court held was entitled to $5,782.50 in back wages), 757 (providing hand scanner record for Gilberto Chub, a time card employee who the Court held was entitled to $17,670.32 in back wages). Because this evidence compels the unrebutted reasonable inference that the hand scanner employees worked for and were underpaid by Central Laundry, the DOL is entitled to collect backpay for the hand scanner employees for the period documented in the records, and beyond that period to the extent supported by reasonable inference.[8]

---

[8] In computing the appropriate backpay for these employees, the District Court on remand should consider the fact that, similar to the time card employees discussed above, two of the hand scanner employees were also mentioned in the testimony of another Central Laundry employee for whom the District Court awarded back wages. Specifically, Mirna Aguilar, an interviewed employee, stated that she worked with "Lourdes," a hand scanner employee, App. 944, for the "entire time" Mirna worked at

Lastly, the District Court did not clearly err in holding that the DOL failed to prove that payroll employees were not paid for breaks. The DOL argues that the weekly payroll record and time cards, which feature dates without years and are often illegible, give rise to the reasonable inference that these employees were not paid for two 15-minute rest breaks per day. This ignores statements from two of the three payroll employees that their paychecks were "accurate" and were "always right" and "never wrong." App. 13, 978-79. Where it is possible to draw "two permissible views of the evidence," we defer to the fact finder under the clear error standard. Anderson, 470 U.S. at 574. Here, the employees' statements to the DOL support the District Court's conclusion that the employees were paid for breaks.[9] Therefore, we will not disturb the District Court's finding as to the payroll employees.

III

For the foregoing reasons, we will affirm the judgment of the District Court in part, reverse in part, and remand for proceedings consistent with this opinion.

---

Central Laundry. App. 1023, 1046. Mirna also testified that she worked with "Roberto," another hand scanner employee. App. 1049. We leave it to the Court to consider whether this testimony, together with the existing hand scanner records, is sufficient to raise a reasonable inference that "Lourdes" and/or "Roberto" worked for Central Laundry for a duration longer than the week-long period reflected in the documents the DOL produced at trial.

[9] Further, Central Laundry was able to produce complete weekly (though not hourly) records showing that, unlike the cash-paid workers, the payroll employees were compensated through weekly paychecks. The District Court did not err in refusing to infer that these employees were treated identically to cash-paid employees, including having unpaid breaks.

9